# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

WILLIAM KEITH COMER,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-358
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 22).

## I. Procedural Background

Plaintiff filed an application for SSI in October 2009, alleging disability since March 6, 2008, due to asthma, depression, anxiety, attention deficit disorder (ADD), and a learning disability.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Kristen King. Plaintiff, plaintiff's sister, and a vocational expert (VE) appeared and testified at the ALJ hearing. On December 8, 2011, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff subsequently amended his alleged onset date to October 1, 2009. (Tr. 167).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.     The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since October 22, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: asthma, osteoarthritis of the bilateral hands, degenerative joint disease and degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, borderline intellectual functioning, major depressive disorder with anxiety, learning disorder, personality disorder, and a history of polysubstance abuse (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: he can never climb ladders, ropes, or scaffolds; never crawl; limited to occasional climbing of ramps or stairs, balancing, stooping, kneeling, and crouching; can perform gross manipulation and fine manipulation and feeling no more than frequently; avoid concentrated exposure to extreme cold, and to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; limited to simple, routine, and repetitive tasks; must have no more than occasional interaction with the public, and no transactional interactions, such as sales or negotiations; limited to occasional interaction with co-workers and supervisors, but no tandem tasks; limited to a work environment with no more than occasional changes in the work setting, and[ ] no production rate pace work, but instead, goal-oriented work.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. The [plaintiff] was born [in] . . . 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since October 22, 2009, the date the application was filed (20 C.F.R. 416.920(f)).

(Tr. 11-24).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2] Plaintiff's past relevant work was as a cook, housekeeper, packer, and stock clerk. (Tr. 174).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 1,600 unskilled, light jobs in the regional economy, citing jobs such as packer, general factory worker, and light level cleaner. (Tr. 77).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff raises three assignments of error. First, plaintiff argues that the ALJ's residual functional capacity (RFC) formulation is not substantially supported because the ALJ erroneously discounted opinion evidence on plaintiff's mental impairments. Plaintiff further asserts the ALJ improperly created her own medical opinion on plaintiff's mental RFC. Second, plaintiff asserts the ALJ's Step Five finding is not substantially supported because there was no medical opinion in the record regarding plaintiff's mental functional limitations when the VE provided his testimony. Third, plaintiff argues the ALJ erred in discounting plaintiff's credibility. (Doc. 14 at 6-13). The Court will address plaintiff's assignments of error in turn.

1. <u>Whether the ALJ erred in formulating plaintiff's mental RFC.</u>

Plaintiff asserts that the ALJ erred in formulating her mental RFC because the opinion evidence of record establishes he has greater functional limitations than those found by the ALJ. Plaintiff further asserts that in weighing this opinion evidence, the ALJ selectively cited to the record and discussed only that evidence which supported her decision and ignored evidence to the contrary. Lastly, plaintiff maintains the mental RFC crafted by the ALJ is not supported by any opinion evidence and therefore lacks substantial support in the record. Plaintiff's arguments are well-taken.

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id.* (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 CFR §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration

is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted). With this framework in mind, the Court turns to plaintiff's arguments.

Plaintiff suffers from severe borderline intellectual functioning, major depressive disorder with anxiety, learning disorder, and personality disorder. (Tr. 11). Plaintiff was treated for his mental health impairments at Cherokee Health Systems (CHS) in Tennessee from October 2008 to August 2009. (Tr. 229-47). Treatment notes from CHS reflect that plaintiff's mood was depressed and anxious; his affect ranged from normal to depressed to restricted; his thoughts were usually normal but occasionally "scattered and impoverished"; and he had impaired judgment and insight and suicidal thoughts but no plan. (Tr. 229, 234, 235, 241). At intake, plaintiff reported that he felt on edge; self-isolated; became "paranoid, scared, shaky, and sweaty" around others; and had past trauma, including physical abuse, which caused nightmares and was "triggered by loud people who drink." (Tr. 229-30). Later treatment notes include plaintiff's subjective reports that he heard his deceased mother crying and his father's voice telling him to "behave"; saw shadows and people in his peripheral vision; was tired all the time and hopeless about improvement; had difficulty sleeping; and was "living transiently with

7

friends" in January 2009 after a girlfriend "kicked him out. . . ." (Tr. 233, 235, 241). Medical providers at CHS diagnosed plaintiff with post-traumatic stress disorder, moderate and recurrent major depression with psychotic features, and alcohol abuse unspecified and assigned him Global Assessment of Functioning[4] Scores of 50 and 48. (Tr. 229, 231, 234, 241, 245). Plaintiff was treated with talk therapy and Seroquel and Zoloft. (Tr. 231, 234-35, 242, 245).

In March and April 2010, Caroline Lewin, Ph.D, and Aracelis Rivera, Psy.D., were asked by the Social Security Administration to review plaintiff's records and generate opinions on plaintiff's mental RFC. Both doctors determined that there was insufficient evidence in the record to assess plaintiff's functional limitations. *See* Tr. 392-407.

Plaintiff subsequently moved to Ohio and was treated at Central Community Health Board (CCHB) from June 2010 to at least June 2011. (Tr. 410-42). Plaintiff's mental health providers at CCHB observed that he had a depressed, anxious, and irritable mood; his affect ranged from restricted to broad/full; he had poor judgment and limited insight; his intelligence was below average; he was tearful on one occasion; and his thought content was normal though he once reported thoughts of death. (Tr.412, 421, 425, 427, 437). At intake, plaintiff reported using alcohol daily and using crack cocaine when it was around; a history of suicidal thoughts; thoughts of hurting others; a history of physical abuse; attempted sexual abuse by a family member; and being unable to be in crowds or have anyone behind him due to his incarcerations. (Tr. 439-41). His intake evaluator stated that plaintiff appeared "very lonely," was highly

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with scores of 41-50 are classified as having "serious" symptoms. *Id.* at 32.

impulsive and at a high risk of committing violence, and was influenced by prison culture. (*Id.*). Plaintiff was diagnosed with moderate, recurrent major depressive disorder, alcohol and cocaine dependence, and an unspecified personality disorder. (Tr. 435). He was assigned a GAF of 50. (*Id.*). Plaintiff was treated with Seroquel and Zoloft and attended talk therapy sessions. *See* Tr. 410-33.

Plaintiff's primary mental health provider at CCHB was Certified Nurse Practitioner Brenda McKinstry. *See* Tr. 412, 418, 421, 425, 427, 429-31. In October 2010, plaintiff reported thoughts of death and being easily frustrated. (Tr. 427). In March 2011, plaintiff reported he was incarcerated for assault and had been sober for four months; he had been hearing noises, such as his deceased parents crying; and he was currently living in a half-way house. (Tr. 425). The next month plaintiff reported difficulty sleeping, anxiety, paranoia and fearfulness, and intrusive thoughts. (Tr. 421). In May 2011, plaintiff reported he wanted to leave the shelter he was staying in because he was having difficulty dealing with other people and that he had left the half-way house for the same reason. (Tr. 418). Plaintiff reported in June 2011 that he was going to a group home and he had some hope, but he also had continued feelings of depression and irritability and ongoing anxiety, fatigue, and intrusive thoughts. (Tr. 412). Notes from this session include Nurse McKinstry's numerical rankings of plaintiff's symptoms. On a scale of zero to ten, with zero being "no symptoms" and ten being "extreme symptoms," Nurse McKinstry ranked plaintiff's depression at a three, and his irritability, mood lability, agitation, and anxiety at a one. (Tr. 412).

Nurse McKinstry completed a Mental Impairment Questionnaire (RFC and Listings) form on August 29, 2011. (Tr. 538-45). Nurse McKinstry opined that plaintiff had moderate

9

restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 542). She further opined that plaintiff would miss more than four days of work a month due to his mental impairments. (Tr. 543). As support for her opinion, Nurse McKinstry noted that plaintiff exhibited the following signs or symptoms: anhedonia; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; intense and unstable interpersonal relationship and impulsive and damaging behavior; emotional lability; and easy distractibility. (Tr. 540). Nurse McKinstry reported that alcohol or substance abuse did not contribute to the limitations she assigned to plaintiff. (Tr. 544).

At the ALJ hearing, plaintiff's attorney asked the ALJ to order a psychological consultative examination given the lack of opinion evidence in the record. (Tr. 33). The record did not yet include the information from CCHB or Nurse McKinstry. The ALJ granted this request and in October 2011 plaintiff met with consultative examining psychologist Norman Berg, Ph.D. (Tr. 560-70). Dr. Berg diagnosed plaintiff with moderate, recurrent major depressive disorder with anxiety, alcohol and polysubstance abuse, and borderline intellectual functioning, and assigned him a GAF score of 52. (Tr. 565). Dr. Berg opined that plaintiff was "capable of understanding, remembering, and carrying out very simple verbal instructions as long as the material was commensurate with his estimated level of intelligence which is in the borderline range." (Tr. 567). Dr. Berg found that plaintiff had some difficulty with attention and concentration and would be able to perform simple tasks but would have difficulty

performing multi-step tasks. (*Id.*). Dr. Berg also opined that plaintiff would have difficulty responding appropriately to coworkers and supervisors and with coping with work pressures in a job that required functioning above the borderline intellectual level. (*Id.*). Further, Dr. Berg observed that plaintiff functioned in a moderately slow to at times slow manner and appeared to be depressed to a moderately severe degree. (Tr. 563).

Dr. Berg also completed a Medical Source Statement form provided by the Social Security Administration. (Tr. 568-70). Dr. Berg opined that plaintiff was mildly restricted in his ability to understand, remember and carry out simple instructions; moderately restricted in his ability to make judgments or simple work-related decisions; and extremely restricted in his ability to understand, remember and carry out complex instructions and make judgments on complex work-related decisions. (Tr. 568). Dr. Berg further opined that plaintiff's abilities to interact appropriately with the public, supervisors or co-workers, and to respond appropriately to usual work situations and to changes in a routine work setup were markedly restricted. (Tr. 569).

In assessing plaintiff's mental function limitations, the ALJ determined plaintiff was mildly limited in activities of daily living and moderately limited in social functioning and in concentration, persistence, and pace. (Tr. 12). The ALJ gave "little weight" to Nurse McKinstry's findings because they were based on plaintiff's subjective reports and not objective or clinical evidence. (Tr. 22). Notwithstanding the foregoing, the ALJ found that Nurse McKinstry's findings of moderate functional limitations in activities of daily living, social functioning, and concentration, persistence or pace were "consistent with other opinions of record and the overall evidence." (Tr. 22, citing Tr. 542).

The ALJ gave "some weight" to Dr. Berg's opinion that plaintiff had moderate mental functional limitations but was able to carry out simple work instructions. (*Id.*, citing Tr. 568). The ALJ gave "less weight" to Dr. Berg's "statements" that plaintiff's depression and anxiety would reduce his ability to respond to work pressures and that plaintiff would have problems with work pressure in jobs requiring more than borderline intellectual functioning, finding that these "statements" were not specific as to plaintiff's functional limitations. (Tr. 22-23). The ALJ rejected Dr. Berg's opinion that plaintiff had marked limitations in social functioning based on plaintiff's "level of functioning as to daily activities, his social interactions as described above, reliability issues as to his self-reports, and the other medical findings of record." (Tr. 23). For the following reasons, the ALJ's mental RFC formulation is not supported by substantial evidence.

First, there is no medical opinion evidence supporting the ALJ's determination that plaintiff had only mild restrictions in his activities of daily living. The only opinion evidence in the record on plaintiff's daily living activities is from Nurse McKinstry, who opined that plaintiff had moderate restrictions. Despite finding that Nurse McKinstry's assessment was "consistent with other opinions of record and the overall evidence" (Tr. 22), the ALJ nevertheless determined that plaintiff had only mild restrictions in daily living activities.[5] The only other evidence cited by the ALJ to support her finding of mild restrictions was plaintiff's alleged ability "to care for his personal needs, prepare simple food for himself, do basic housekeeping tasks, and shop for his needs." (Tr. 12). The ALJ created her own medical opinion by rejecting Nurse McKinstry's "moderate" limitations and finding only mild limitations in activities of daily

---

[5] Dr. Berg did not provide an opinion as to plaintiff's level of functioning in activities of daily living.

12

living based solely on the ALJ's impression of plaintiff's self-care abilities. There is no opinion evidence whatsoever in the record supporting the ALJ's unilateral assessment that plaintiff's activities of daily living were only mildly restricted. The Court therefore concludes that the ALJ impermissibly created her own lay medical opinion with regard to plaintiff's mental impairments. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Second, the ALJ's decision is internally inconsistent. As stated above, the ALJ found Nurse McKinstry's opinion that plaintiff had moderate restrictions in his activities of daily living was "consistent with other opinions of record and the overall evidence." (Tr. 22). The ALJ failed to explain why these "consistent"[6] limitations were not adopted, despite no medical opinion to the contrary. In addition, the ALJ's finding that plaintiff can self-care is not substantially supported by the evidence of record. The ALJ failed to cite to any evidence supporting her claim that plaintiff can care for his personal needs, prepare simple food for himself, do basic housekeeping tasks, and shop for his needs. Further, review of the record establishes that the ALJ's findings do not accurately portray plaintiff's ability to care for himself. Plaintiff testified that he requires help from his sister in filling out job applications, that he spends most of his time alone watching television, and that he generally stays in his room because he is afraid of people. (Tr. 39, 51-52). Plaintiff further testified that he does not do any cleaning because people at his group home do that for him. (Tr. 61). Plaintiff's sister

---

[6] Notably, the ALJ's finding that Nurse McKinstry's finding of moderate restriction in activities of daily living is consistent with other opinions of record is without basis in fact because there is no other opinion in the record on plaintiff's limitations in this functional domain.

testified that she helps him shop, explains what clothes he should buy, tries to show him how to cook something besides fast food, and checks with plaintiff to make sure he takes his medication. (Tr. 70-71). The ALJ's characterization of plaintiff's ability to self-care, *e.g.*, that plaintiff keeps house and shops, lacks substantial support in the record.

Third, the ALJ's decision to reject Dr. Berg's opinion that plaintiff was markedly limited in social functioning is not supported by substantial evidence. The ALJ rejected Dr. Berg's finding "based on [plaintiff]'s level of functioning as to daily activities, his social interactions as described above, reliability issues as to his self-reports, and the other medical findings of record." (Tr. 23). The ALJ failed to cite to any opinion evidence supporting this determination or explain what "other medical findings of record" were inconsistent with Dr. Berg's opinion. Moreover, as with her description of plaintiff's activities of daily living, the ALJ's characterization of plaintiff's social functioning is at odds with the record evidence.

In rejecting Dr. Berg's finding of a marked restriction in social functioning, the ALJ found that plaintiff's activities of daily living, *inter alia*, established only moderate limitations. As detailed above, the evidence of record reflects that plaintiff spends much of his time alone in his room watching television, requires assistance from his sister to shop, cook, and complete job applications, and does no cleaning at the group home where he lives. Nevertheless, the ALJ found that plaintiff cares for his personal needs, keeps house, and shops independently. This finding lacks substantial evidentiary support and, consequently, the ALJ erred by rejecting Dr. Berg's finding of a marked restriction in social functioning on this basis.

The ALJ similarly misapprehends the record evidence regarding plaintiff's social interactions. The ALJ found that plaintiff has only mild limitations in social functioning based

on plaintiff's ability to cooperate with doctors, shop at a local store, and maintain daily contact with his sister. (Tr. 12). While the ALJ thoroughly detailed much of the evidence of plaintiff's social functioning difficulties, *see, e.g.*, Tr. 14, 15 (noting plaintiff's testimony about being scared around people and not often leaving his room, plaintiff's reports of violence and homicidal thoughts, and medical providers' notations that plaintiff was at a high risk for violence), she does not explain how or why this evidence is outweighed by plaintiff's testimony of occasional shopping and socializing with only his sister. The ALJ's failure to resolve this inconsistency leaves her rationale for rejecting Dr. Berg's medical opinion without substantial support in the record. Moreover, it is unclear how plaintiff's ability to get medical treatment, frequent a convenience store, and interact with his sister relate to his ability to interact appropriately with supervisors, co-workers, and the general public, or to respond to routine changes in work situations. Nor do these interactions establish that plaintiff would be able to "do any of these activities on a *sustained basis*, which is how the functional limitations of mental impairments are to be assessed." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (citing 20 C.F.R. § 404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00).

The Court also notes that the ALJ's reliance on plaintiff's self-reports and testimony is inconsistent with her rejection of Dr. Berg's finding of a marked restriction in social functioning based on "reliability issues as to [plaintiff's] self-reports. . . ." (Tr. 23). The ALJ does not explain why the statements plaintiff made to Dr. Berg or any other medical provider are less credible than plaintiff's testimony at the ALJ hearing. Nor does she explain why plaintiff's testimony regarding occasional visits to the store and interaction with his sister is credible but his other testimony is not. The ALJ may not arbitrarily pick and choose as "credible" only those

statements made by plaintiff which purportedly support her finding of moderate social functioning limitations, while discounting plaintiff's statements to Dr. Berg without articulating the rationale therefor. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).

For the above reasons, the Court finds that the ALJ's mental RFC formulation is not supported by substantial evidence. The ALJ's finding that plaintiff has mild restriction in activities of daily living is not supported by any medical opinion evidence and her rationale for discounting the opinions of Dr. Berg and Nurse McKinstry is flawed because the ALJ mischaracterized and selectively relied on evidence to support her findings. Accordingly, plaintiff's first assignment of error should be sustained, and this matter should be reversed and remanded for further proceedings. On remand, the ALJ should be instructed to re-weigh the medical opinions of record, provide a clear and consistent rationale supporting her findings, and to reassess plaintiff's mental RFC.

2. Whether the ALJ presented an improper hypothetical to the VE.

For his second assignment of error, plaintiff asserts that the ALJ erred by relying upon flawed vocational testimony because the hypothetical question presented to the VE did not properly characterize his functional abilities. Plaintiff argues the VE's testimony was flawed because Nurse McKinstry and Dr. Berg's opinions were not part of the record at the time of the hearing. Therefore, the ALJ failed to present hypothetical questions reflecting the mental functional limitations assigned by these sources. (Doc. 14 at 11-12).

As discussed above, the ALJ's bases for discounting Dr. Berg and Nurse McKinstry's opinions and her RFC formulation lack substantial support. Consequently, the hypothetical

questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations. Accordingly, the ALJ erred by relying on this vocational testimony to carry her burden at Step Five of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's second assignment of error should be sustained and this matter should be reversed and remanded with instructions to the ALJ to provide a hypothetical question to the VE that accurate portrays plaintiff's mental impairments as determined by the ALJ after re-weighing the opinion evidence and formulating a consistent RFC.

3. Whether the ALJ erred in discounting plaintiff's credibility.

For his final assignment of error, plaintiff asserts the ALJ erred in assessing his credibility. As stated above, the undersigned recommends that this matter be remanded because the ALJ's rationale for rejecting the mental functioning limitations assessed by Nurse McKinstry and Dr. Berg, RFC formulation, and Step Five determination are not supported by substantial evidence. As resolution of these issues on remand may impact the remainder of the ALJ's sequential evaluation, including her assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.*, a remand for further proceedings and not an outright reversal for benefits.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings with instructions to the ALJ to re-weigh the opinion evidence on plaintiff's mental impairments, reformulate plaintiff's RFC, and obtain new VE testimony consistent with the newly assessed RFC as stated above.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 5/28/14

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM KEITH COMER,<br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | Case No. 1:13-cv-358<br><br>Barrett, J.<br>Litkovitz, M.J. |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).